UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HARMONY INNOVATION
SHIPPING LIMITED

        Plaintiff,
vs.

IOF PTE., LTD., BHATIA INTERNATIONAL
PTE., LTD., BHATIA INTERNATIONAL LTD.,
BHATIA GLOBAL TRADING LTD.,
FLEETMAR SHIPPING COMPANY LIMITED,
GURU CORPORATION LIMITED,
INDORE CORPORATION LIMITED,
PATRIOTIC SERVICES INCORPORATED,
GREGARIOUS ESTATE INCORPORATED.

        Defendants.
------------------------------------------------------------------X

12 CV 6767

1:12-CV_____

**VERIFIED COMPLAINT**

      Plaintiff, HARMONY INNOVATION SHPPING LIMITED ("HARMONY"), by and through its attorneys, Chalos & Co., P.C.., as and for its Verified Complaint against Defendants, IOF PTE., LTD., ("IOF"), Bhatia International Pte., Ltd ("BIP"), Bhatia International Ltd. ("BIL"), Bhatia Global Trading Ltd. ("BGT"), Fleetmar Shipping Company ("FLEETMAR"), Guru Corporation Limited ("GURU"), Indore Corporation Limited ("INDORE"), Patriotic Services Incorporated ("PATRIOTIC"), Gregarious Estate Incorporated ("GREGARIOUS") (hereinafter collectively "Defendants"), alleges upon information and belief as follows:

### I. JURISDICTION, VENUE, AND PARTIES

      1.    This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract *i.e.* an executed contract of affreightment for the employment of a seagoing cargo vessel. This

Chalos & Co. Ref: 2094.035

1

case also falls under this court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.  At all times material hereto Plaintiff, HARMONY, is a foreign corporation whose business activities include operating and chartering out vessels.

3.  At all times Material hereto Defendant, IOF was and is a foreign company organized under the laws of Singapore and shares a principal place of business with BIP at 138 Cecil Street, Singapore.

4.  At all times material hereto, Defendant, BIP is a foreign corporation or other business entity organized under the laws of Singapore with an office and place of business located at 138 Cecil Street, Singapore. BIP serves as the vessel owning/operating arm of the Bhatia Group of Companies and owns/operates vessels through its wholly owned subsidiaries which are also Defendants in this action.

5.  Defendant BIL is a foreign corporation or other business entity organized under the laws of India with an office and place of business located at 8/5 BCC House, Manoramaganj Navratan Bagh, Indore, India. On information and belief, BIL serves as the coal trading arm of the Bhatia Group of Companies. That group includes the other Defendants in this action and the group is primarily involved in both international coal trading and vessel operations.

6.  Defendant BGT is a foreign corporation or other business entity organized under the laws of India and shares a principal place of business with BIL at 8/5 BCC House, Manoramaganj Navratan Bagh, Indore, India. On information and belief, BGT is a member of

Bhatia Group of Companies and an alter ego of BIL and BIP.

7. Defendant FLEETMAR is a foreign corporation or other business entity organized under the laws of Cyprus. FLEETMAR is a wholly owned subsidiary of BIP, which shares a principal place of business with BIP at 138 Cecil Street, Singapore, and is merely an alter ego of BIP and BIL, which use FLEETMAR as a shell company to own/operate the M/V ASHKNEER (ex-HARKRIPA; ex-FLORA).

8. Defendant GURU is a foreign corporation or other business entity organized under the laws of the Marshall Islands. GURU is a wholly owned subsidiary of BIP, which shares a principal place of business with BIP at 138 Cecil Street, Singapore, and is merely an alter ego of BIP and BIL, which use GURU as a shell company to own/operate the M/V GURASIS.

9. Defendant INDORE is a foreign corporation or other business entity organized under the laws of the Marshall Islands. INDORE is a wholly owned subsidiary of BIP, which shares a principal place of business with BIP at 138 Cecil Street, Singapore, and is merely an alter ego of BIP and BIL, which use INDORE to own/operate the M/V PRIDE OF INDORE.

10. Defendant PATRIOTIC is a foreign corporation or other business entity organized under the laws of Liberia. PATRIOTIC is a wholly owned subsidiary of BIP, which shares a principal place of business with BIP at 138 Cecil Street, Singapore, and is merely an alter ego of BIP and BIL, which use PATRIOTIC as a shell company to own/operate the M/V SHER-E PUNJAB.

11. Defendant GREGARIOUS is a foreign corporation or other business entity organized under the laws of Liberia. GREGARIOUS is a wholly owned subsidiary of BIP,

which shares a principal place of business with BIP at 138 Cecil Street, Singapore, and is merely an alter ego of BIP and BIL, which use GREGARIOUS as a shell company to own/operate the M/V VEENUS.

## II. THE SUBSTANTIVE CLAIMS

12. By a contract of affreightment ("COA") dated January 13, 2011, on the Americanized Welsh Coal form, Defendant IOF, as charterers, agreed to ship a total of twenty (20) coal cargoes for Plaintiff, as owners, to carry by vessels to be nominated between India and Indonesia beginning January 2011 through December 31, 2012. *A copy of the COA is attached hereto as EXHIBIT 1.*

13. The January 13 COA is a maritime contract.

14. Defendant BIP expressly guaranteed IOF's obligations under the contract and is also a joint and several principal obligor under same pursuant to a separate performance guarantee dated January 13, 2011. *A copy of the performance guarantee is attached hereto as EXHIBIT 2.*

15. In December 2011, IOF nominated Tanjung Buyut Anchorage, Indonesia as the load port for the fourth (4th) shipment under the COA.

16. In accordance with its obligations under the COA, Plaintiff nominated and delivered the M/V SPAR CORVUS to perform this shipment.

17. Pursuant to the terms of the COA, under the fourth (4th) shipment, Defendants were required to pay to Plaintiff USD 1,001,799.10 for, *inter alia*, freight, war risk premiums and demurrage.

18. With respect to this shipment, IOF made a partial payment of USD 865,896.30, of

Chalos & Co. Ref: 2094.035

which USD 815,703.40 was paid by BIP on behalf of IOF. *A copy of the SWIFT transfer is attached hereto as **EXHIBIT 3**.* However despite being sent appropriate invoices and in breach of the COA, Defendants have neglected, failed or otherwise refused to pay the remaining USD 135,902.80.

19. In addition, under the terms of the COA, the Defendants were required to effect eight (8) evenly spread shipments in 2012. By May 13, 2012, only two (2) shipments had been made.

20. Pursuant to the COA, Defendants were required to make a shipment approximately every thirty-five days.

21. Accordingly, Defendants were required to provide a laycan and a load port for the next three (3) shipments on or about June 2, 2012, July 22, 2012 and August 11, 2012, respectively.

22. To date, IOD and BIP has failed to nominate cargoes for at least three (3) additional voyages under the COA, which should have occurred and have thereby caused Plaintiff to incur additional damages equal to at least USD 641,194.34 broken down as follows:

    a)    *Seventh Shipment*.................................    USD 262,300.00

    b)    *Eighth Shipment*..................................    USD 162,794.44

    c)    *Ninth Shipment*...................................    USD 216,099.90

23. In breach of the terms of the January 13 COA, Defendants IOF and BIP have refused, neglected, and/or otherwise failed to pay (or provide security for) Plaintiff's principal claims and/or damages totaling USD 777,097.14.

## III. UNDERLYING PROCEEDINGS ON THE MERITS

24. Pursuant to the terms of the COA, disputes between the parties are to be submitted to arbitration in London with English law to apply. Plaintiff has commenced arbitration against Defendant IOF by nominating its arbitrator.

25. Under the terms of the performance guarantee (*see Exhibit 2*), all disputes between Plaintiff and BIP are subject to the exclusive jurisdiction of the English High Court with English law to apply. The Claimant is preparing a Claim for issue in the High Court as soon as practicable.

26. This action is an ancillary proceeding, brought in order to obtain jurisdiction over Defendants and to obtain security for Plaintiff's claims in aid of the London proceedings (both arbitration and High Court).

27. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for the recovery of these items as part of an award in favor of the prevailing party. In addition, S35A of the English Senior Courts Act 1981 specifically allows for the recovery of interest as part of a judgment in favor of the prevailing party.

28. As best as can now be estimated, Plaintiff HARMONY expects to recover the following amounts in London Arbitration from defendant IOF and/or in High Court proceedings from the defendant BIP:

    A. Principal Claim.............................. USD 777,097.14

    B. Estimated Interest on Principal Claim...... USD 103,093.84
       *2.5 years at 5.0% compounded quarterly*

Chalos & Co. Ref: 2094.035

  C. Estimated attorney's fees..................... USD 250,000.00

  D. **TOTAL**......................................... **USD 1,130,190.98**

29. Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants IOF and BIP is in the aggregate sum of **USD 1,130,190.98.**

## IV. <u>DEFENDANTS' CORPORATE IDENTITY</u>

30. Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures, but always subject to the command and control of the Bhatia Group.

31. Though Defendants comprise nominally separate corporate legal entities, their ownership and control is so intertwined and fused that Defendants BIL, BIP, BGT, IOF, GURU, INDORE, FLEETMAR, GREGARIOUS, and PATRIOTIC, are distinct from one another only in a *pro forma* manner.

32. The Bhatia Group has an extensive history of disregarding the corporate separateness of affiliates (particularly those involved in the shipping industry) for the purpose of transferring or concealing assets in order to frustrate creditors.

33. For example, prior to mid-2009, a company called Ishhar Overseas FZE ("Ishhar") conducted vessel related activities for the Bhatia Group and was, on information and belief, a wholly owned subsidiary of BIL. However, in 2009 Ishhar faced substantial claims for non-payment of charter hire and was therefore succeeded by IOF and BIL as the vessel chartering and management arm of the Bhatia Group. That reorganization also provided cover

for the transfer, without adequate consideration, of over $85 million from Ishhar to BIP as is reflected in BIP's 2011 Financial Statement which provides that on 31 July 2009, BIP:

> Issued 48,200 ordinary shares to Ishhar Overseas FZE, Dubai for consideration of US$85,827,458 . . . [and] on 9 November 2009 Ishhar Oversease FZE, Dubai sold 48,200 ordinary shares to Bhatia Holding Pte. Ltd. for a total consideration of US$402,952.

*A copy of the Financial Statement is attached hereto as **EXHIBIT 4**; see* pg. 70.

34. Pursuant to Bhatia Group's own 2011 Financial Statement, $85 million was transferred from Ishhar to BIP for zero consideration in an effort to conceal assets that would otherwise have been available for creditors.

35. All of the Defendants have an overlapping ownership structure. BIL's shares are held by members of the Bhatia family and by other companies within the Bhatia Group.

36. One of the major BIL shareholders is BGT which, in turn, is the largest shareholder in BIP. BIP's other two shareholders are BIL itself and a company called BIL Holding Pte. Ltd. ("BIL Holding").

37. IOF is also a wholly owned subsidiary of BIL Holding.

38. FLEETMAR, GURU, INDORE, PATRIOTIC, and GREGARIOUS are wholly owned subsidiaries of BIP.

39. BIL's managing director is Surinder Singh Bhatia who is also a major BIL shareholder and a director of BIP. Indeed, the 2011 Financial Statement for BIP and its Subsidiaries identifies Surinder Singh Bhatia as one of only two directors for BIP and provides that BIP shares a common director with IOF. *See* Exhibit. 4 at pg. 6, 43.

40. Upon information and belief, the only personnel with any authority to control Defendants FLEETMAR, GURU, INDORE, PATRIOTIC, and GREARIOUS are also affiliated with entities in the Bhatia Group.

41. BIP, IOF, FLEETMAR, GURU, INDORE, PATRIOTIC, and GREARIOUS share offices located at 138 Cecil Street, Singapore. *See* Exhibit 4, at pg. 23; *see also IOF's 2011 Financial Statement at page 1 attached hereto as **EXHIBIT 5**.*

42. Documents concerning loan facilities extended to PATRIOTIC and GREGORIOUS direct that all notices for those entities should be sent to BIP in Singapore. *See copies of the pertinent Loan Facility attached hereto as **EXHIBIT 6**.*

43. Furthermore, P&I insurance records for the vessels nominally owned by FLEETMAR, GURU, INDORE identify BIP – rather than the nominal owners – as being the point of contact for the insureds. *See records from Assuranceforeningen Gard concerning the ASHKNEER, GURASIS, and PRIDE OF INDORE attached hereto as **EXHIBIT 7**.*

44. BIP, BIL and BGT regularly guarantee the debts and performance obligations of the other Defendants.

45. Specifically, BIP guaranteed IOF's performance of the COA.

46. In addition, with respect to the first (1st) shipment under the COA, BGT, a non-party to the COA, issued a letter of indemnity to HARMONY in exchange for the release of the cargo without presentation of the original bills of lading to the vessel's Master. This letter of indemnity was issued on BGT company letterhead, which lists the same corporate office as BIL. *A copy of the letter of indemnity sent by BGT is attached hereto as **EXHIBIT 8**.*

Chalos & Co. Ref: 2094.035

9

47. Both BIP and BIL issued guarantees to secure a loan from Standard Chartered Bank to FLEETMAR for purchasing the ASHKNEER (ex-HARKRIPA). *See* Exhibit 4, at pg. 72.

48. Both BIP and BIL issued guarantees to secure a loan from Bank of Baroda to GURU for purchasing the GURASIS. *Id.*

49. Both BIP and BIL issued guarantees to secure a loan from the State Bank of India to INDORE for purchasing the PRIDE OF INDORE. *See* Exhibit 4, at pg. 73.

50. BIP issued guarantees to secure loans from the Bank of Scotland to PATRIOTIC and GREGARIOUS for purchasing the SHER-E PUNJAB and the VEENUS. *Id.*

51. On information and belief, BIL also issued a guarantee regarding the SHER-E PUNJAB and the VEENUS.

52. On information and belief, BIP and BIL regularly use property belonging to other entities in the Bhatia Group as communal property. For instance, as noted in paragraph 32, *supra*, over $85 million of Ishhar's property was transferred to BIP for inadequate consideration. Likewise, an Ishhar-owned villa in Dubai was mortgaged as cross-collateral for the loan used by FLEETMAR to purchase the MV ASHKNEER (ex-HARKRIPA). *See* Exhibit 4 at p. 72.

53. Likewise, on information and belief, Isshar (rather than any of the nominal vessel owners) maintains the hull and machinery insurance policies for the GURASIS, ASHKNEER, and PRIDE OF INDORE. *See* Exhibit 7.

54. Similarly, BIP and BIL routinely take steps to ensure that they retain ultimate control over the vessels that are nominally owned by their dominated subsidiaries.

55. Loan documents concerning FLEETMAR's purchase of the MV ASHKNEER (ex-HARKRIPA, ex-FLORA) provide that BIP's predecessor (Ishhar) would bareboat charter the vessel from FLEETMAR and that BIL would then time charter the vessel from BIP. *A copy of the term sheet for the loan is attached hereto as* **EXHIBIT 9**, *at pg. 3.*

56. BIP and BIL were thereby the real parties in interest for the loan and purchase involving the ASHKNEER. *See* Exhibit 4, at 44 (showing that for both 2010 and 2011 the group-level freight income equaled BIP's freight income which means that every penny of freight was paid to BIP rather than to its subsidiaries which only nominally own the concerned vessels)

57. BIP is the ship manager for the ASHKNEER, GURASIS, PRIDE OF INDORE, and VEENUS.

58. Accordingly, BIP and/or BIL exercise outright control over the vessels which are nominally owned by shell company subsidiaries.

59. The Defendants also make payments on behalf of other entities within the Bhatia Group. *See* Exhibit 3.

60. BIP, FLEETMAR, GURU, INDORE, PATRIOTIC, and GREGARIOUS are not treated as independent profit centers. Instead, all of their financial results are consolidated in BIP's Financial Statements.

61. Those subsidiaries are also completely dependent on BIP for their financial viability. For instance, BIP's 2011 Financial Statement provides that it "has undertaken to provide continuing financial support to [Guru, Indore, Gregarious, and Patriotic] to enable them to continue as a going concern[s] and to meet their obligations as and when they fall due." *See* Exhibit 4, at pg. 79.

Chalos & Co. Ref: 2094.035

62. The Defendants do not deal with one another at arms' length. For instance, BIP's 2011 Financial Statement provides that BIP made over $50 million in "quasi equity loans granted to subsidiaries [that] are unsecured, interest free and are not expected to be repaid within the next financial year." *Id.*, at pg. 50. Companies dealing at arms' length ordinarily seek security for multi-million dollar loans, charge interest, and expect to be repaid in a timely manner.

63. In connection with a loan extended by Bank of Baroda to GURU for purchasing the MV GURASIS, BIL agreed to charter the vessel to the extent necessary to ensure that the vessel carried a minimum of 500,000 MTs of cargo per annum. Ordinarily, companies dealing at arms' length do not agree to charter vessels unless they have an economic need for the vessels to carry cargo. *See the GURASIS mortgage documents attached hereto as **EXHIBIT 10**, at pg. 1-2.*

64. Just as the Defendants coordinated to insulate Ishhar from creditor enforcement efforts by removing $85 million from that entity in 2009, the Defendants have taken other coordinated steps to protect their assets and frustrate creditors.

65. On information and belief, BIL, FLEETMAR, GURU, and INDORE all engaged the same law firm to temporarily create a quasi-presence in New York State in an effort to temporarily prevent Rule B attachments. Notably though, the Defendants voluntarily revoked those protective measures, which are no longer in place, following legal developments which prevented the prior practice of attaching wire transfers. *See NYS Department of State Division of Corporation's Print Outs for BIL, FLEETMAR, GURU, and INDORE attached hereto as **EXHIBIT 11**.*

66. Additionally, on May 30, 2012, the Defendants changed the name of the MV HARKRIPA to MV ASHKNEER in an apparent effort to make it more difficult for creditors to locate the vessel.

67. On information and belief, the Defendants are also changing ownership structures and appointing additional – though powerless – directors to further complicate the Bhatia Group's organization and impede creditor enforcement efforts.

68. All of the foregoing factors demonstrate that the Defendants are mere alter egos of one another and the broader Bhatia Group of Companies.

69. Accordingly, it would be fair and equitable for any asset of this enterprise to be subject to the claims of judgment creditors of the Bhatia Group enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

70. None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Attorney Declaration of George M. Chalos attached hereto as **EXHIBIT 12**.* Notwithstanding, the Defendants have within the District tangible or intangible personal property, which is subject to attachment, and in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment.

71. Specifically, on information and belief:

    a. Documents concerning the loan facility extended by Bank of Scotland to the Defendants for purchasing the VEENUS and the SHER-E PUNJAB provided

that certain payments were to be made to the Bank of China at the Bank of China's branch office in New York, New York.; and

b.      Defendants have extensive banking relations, involving multiple types of collateral arrangements secured by property interests that could be attached, with the following banks, which maintain offices in New York City and are subject to the jurisdiction of this Court:

    i.    Standard Chartered Bank
       (Loan facility for MV ASHKNEER [ex-HARKRIPA])
       Foreign Branch Office
       1095 Avenue of the Americas
       New York, New York 10036

    ii.   Bank of Baroda
       (Loan facility for MV GURASIS)
       Foreign Branch Office
       One Park Avenue
       New York, New York 10016

    iii.  State Bank of India
       (Loan Facility for MV PRIDE OF INDORE)
       Foreign Branch Office
       460 Park Avenue
       New York, New York 10022

    iv.   Bank of Scotland
       (Loan facility for MV VEENUS and MV SHER-E PUNJAB)
       Foreign Branch Office
       1095 Avenue of Americas
       New York, New York 10036

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

B.  That if Defendants cannot be found within this district, then all of their respective tangible or intangible property within this district, including physical property, or any property in which Defendants have an interest, debts, credits, or effects including but not limited to: bank accounts, checks, freights, sub-freights, monies, disbursement advances, charter hire, sub-charter hire, payments for bunkers, goods or other services, documents of title, shares of stock or other financial instruments, and any other funds, collateral or property of any kind belonging to, claimed by, or held for the benefit of, the Defendants in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.  That a judgment be entered against the Defendants in the sum of $ **1,130,190.98** and the proceeds of the assets attached be applied in satisfaction thereof;

D.  That the Court grant such other and further relief as it deems just, equitable and proper.

Dated: September 6, 2012  
       Oyster Bay, New York

Respectfully submitted,  
*Attorneys for Plaintiff*  
HARMONY INNOVATION  
SHIPPING LIMITED

By: _____  
CHALOS & Co, P.C.  
George M. Chalos (GC-8693)  
55 Hamilton Avenue  
Oyster Bay, New York 11771  
Tel: (516) 714-4300  
Fax: (516) 750-9051  
Email: gmc@chaloslaw.com

Chalos & Co. Ref: 2094.035

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HARMONY INNOVATION
SHIPPING LIMITED

      Plaintiff,

vs.

IOF PTE., LTD., BHATIA INTERNATIONAL
PTE., LTD., BHATIA INTERNATIONAL LTD.,
BHATIA GLOBAL TRADING LTD.,
FLEETMAR SHIPPING COMPANY LIMITED,
GURU CORPORATION LIMITED,
INDORE CORPORATION LIMITED,
PATRIOTIC SERVICES INCORPORATED,
GREGARIOUS ESTATE INCORPORATED.

      Defendants.

------------------------------------------------------------------X

1:12-CV_____

**VERIFICATION OF COMPLAINT**

      Pursuant to 28 U.S.C. §1746, I, GEORGE M. CHALOS, declare under the penalty of perjury:

      1.    I am the managing partner of CHALOS & CO, P.C., attorneys for Plaintiff, HARMONY INNOVATION SHIPPING LIMITED, in the above-captioned matter, and a member in good standing of this Honorable Court;

      2.    I have read the foregoing Verified Complaint and know the contents thereof; and

      3.    I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

      4.    The reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose

Chalos & Co. Ref: 2094.035

original signature verification cannot be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 6, 2012  
       Oyster Bay, New York

Respectfully submitted,  
*Attorneys for Plaintiff*  
HARMONY INNOVATION SHIPPING LIMITED

By: /s/ George M. Chalos  
CHALOS & Co, P.C.  
George M. Chalos (GC-8693)  
55 Hamilton Avenue  
Oyster Bay, New York 11771  
Tel: (516) 714-4300  
Fax: (516) 750-9051  
Email: gmc@chaloslaw.com